CLOSED,LSS

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: <u>0:18–mj–06356–LSS</u> All Defendants
### *Internal Use Only*

Case title: USA v. Quincones

Date Filed: 07/31/2018
Date Terminated: 07/31/2018

Assigned to: Magistrate Judge
Lurana S. Snow

**Defendant (1)**

| | | |
|---|---|---|
| **Phyllis ricci Quincones** | represented by | **Robert Norman Berube** |
| *TERMINATED: 07/31/2018* | | Federal Public Defender's Office |
| *also known as* | | One East Broward Boulevard |
| Faith Ashford | | Suite 1100 |
| *TERMINATED: 07/31/2018* | | Fort Lauderdale, FL 33301 |
| *also known as* | | 954–356–7436 |
| Grace Rubestello | | Fax: 356–7556 |
| *TERMINATED: 07/31/2018* | | Email: Robert_Berube@FD.org |
| *also known as* | | *LEAD ATTORNEY* |
| Phyllis Ricci | | *ATTORNEY TO BE NOTICED* |
| *TERMINATED: 07/31/2018* | | *Designation: Public Defender Appointment* |
| *also known as* | | |
| Phyllis Ann | | |
| *TERMINATED: 07/31/2018* | | |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:1962 RACKETEERING | |

**Plaintiff**

**USA**                                    represented by  **Terry Lindsey**
United States Attorney's Office
500 E Broward Boulevard
7th Floor
Fort Lauderdale, FL 33301–3002
954–356–7255
Fax: 356–7336
Email: Terry.Lindsey@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/31/2018 | 1 | 3 | Magistrate Removal of Indictment from Southern District of Ohio Western Division Case number in the other District 1:18CR109 as to Phyllis Ricci Quincones (1). (tw) (Entered: 07/31/2018) |
| 07/31/2018 | 2 | 21 | Order to Unseal as to Phyllis Ricci Quincones re 1 Magistrate Removal In. Signed by Magistrate Judge Lurana S. Snow on 7/31/2018. (tw) (Entered: 07/31/2018) |
| 07/31/2018 | 3 | 22 | Minute Entry for proceedings held before Magistrate Judge Lurana S. Snow: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Phyllis Ricci Quincones held on 7/31/2018. Bond set as to Phyllis Ricci Quincones (1) $50,000–PSB (Hearing Held). Date of Arrest or Surrender: 7/31/16.. Attorney added: Robert Norman Berube for Phyllis Ricci Quincones (Digital 11:14:33) (tw) (Entered: 07/31/2018) |
| 07/31/2018 | 4 | 23 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Phyllis Ricci Quincones (tw) (Entered: 07/31/2018) |
| 07/31/2018 | 5 | 24 | $50,000.00 PSB Bond Entered as to Phyllis ricci Quincones Approved by Magistrate Judge Lurana S. Snow. *Please see bond image for conditions of release.* (tw) (Additional attachment(s) added on 7/31/2018: # 1 Restricted Bond with 5th Page) (tw). (Entered: 07/31/2018) |
| 07/31/2018 | 6 | 33 | ORDER OF REMOVAL ISSUED to the Southern District Of Ohio as to Phyllis ricci Quincones. Closing Case for Defendant. Signed by Magistrate Judge Lurana S. Snow on 7/31/2018. *See attached document for full details.* (tw) (Entered: 07/31/2018) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 JUL 25 PM 3: 23

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. **1 I 18 C R 109** |
| : | |
| : | JUDGE **JUDGE BLACK** |
| v. | : |
| : | **SEALED INDICTMENT** |
| : | |
| ANDREY SHUKLIN, 18-6355 | 18 U.S.C. § 1962(d) |
| ▮▮▮▮▮ : | Forfeiture Allegation |
| PHYLLIS RICCI QUINCONES, 18-6356 | |
| a/k/a "Faith Ashford," | OUR CASE NO:18-6356-SNOW |
| a/k/a "Grace Rubestello," | : |
| a/k/a "Phyllis Ricci," | : |
| a/k/a "Phyllis Ann," | : |
| ▮▮▮▮▮ : | |
| | : |
| VLADIMIR PESTEREANU, 18-6358 | : |
| a/k/a "Vova," | : |
| ▮▮▮▮▮ : | |
| | : |
| ROMAN IAKOVLEV, | : |
| ▮▮▮▮▮ : | |
| | : |
| JESSICA MARTIN, 18-6357 | : |
| a/k/a "Emma Ricci," | : |
| a/k/a "Mary Austin," | : |
| ▮▮▮▮▮ : | |
| | : |
| Defendants. | : |

THE GRAND JURY CHARGES:

### COUNT ONE
### (RICO Conspiracy)

1

## Introduction

At times relevant to this Indictment:

1.      The U.S. Department of Transportation ("USDOT"), Federal Motor Carrier Safety Administration ("FMCSA"), monitors and enforces regulations governing safety and commerce for interstate motor carriers, to include federal regulations governing the transportation of household goods by licensed motor carriers (*i.e.*, movers).

2.      Federal regulations require all interstate motor carriers transporting household goods for individual shippers by motor vehicle to follow federal regulations relating to the interstate transportation of household goods.

3.      Under federal regulations, motor carriers who move household goods must be licensed and registered with the USDOT.  To do so, each interstate motor carrier must first apply to operate as a motor carrier of household goods and receive a USDOT number.

4.      Federal forms that interstate motor carriers must complete to operate as movers of household goods include the OP-1 form, the MCSA-1 form, and the MCS-150 form, which are registration and information forms.  The OP-1 form, the MCSA-1 form, and the MCS-150 form require that a representative for the interstate motor carrier certify that all information contained in the respective form is true and correct.

5.      Under federal regulations, the USDOT requires interstate motor carriers, among other things, to provide estimates of moving charges to potential customers in writing, indicating whether the estimate is a "binding" or "nonbinding" estimate.

6.      With a binding estimate, the customer and the motor carrier must both agree in writing to a charge for services prior to the start of any work.  When an estimate is binding, USDOT prohibits the interstate carrier from raising the price of the move unless the interstate motor carrier and the customer re-negotiate the price prior to the commencement of the move.  USDOT regulations

2

forbid interstate motor carriers from increasing the price of a move above the price set forth in a binding estimate after loading customers' household goods.

7.     Failure to meet USDOT requirements can result in a motor carrier being "placed out of service," which means the interstate motor carrier is no longer authorized under federal law to operate as a mover of household goods, and must cease operations.

8.     On or about October 31, 2008, JBR Underground, LLC, doing business as United National Moving and Storage, was authorized by USDOT to operate as a mover of household goods. USDOT ordered JBR Underground, LLC to cease operating as a mover of household goods on or about September 14, 2015.

9.     On or about September 19, 2014, National Relocation Solutions was authorized by USDOT to operate as a mover of household goods. USDOT ordered National Relocation Solutions to cease operating as a mover of household goods on or about October 26, 2015.

10.     On or about November 18, 2014, Independent Van Lines submitted an application to USDOT to operate as a mover of household goods; however, Independent Van Lines failed to comply with other USDOT requirements to obtain authority to operate. USDOT dismissed the application on or about April 27, 2015.

11.     On or about December 24, 2014, National Relocation Van Lines was authorized by USDOT to operate as a mover of household goods. USDOT ordered National Relocation Van Lines to cease operating as a mover of household goods on or about September 17, 2015.

12.     On or about September 18, 2015, US Relocation Systems was authorized by USDOT to operate as a mover of household goods. USDOT ordered US Relocation Systems to cease operating as a mover of household goods on or about June 14, 2016.

13. On or about March 17, 2016, First National Moving and Storage was authorized by USDOT to operate as a mover of household goods. USDOT ordered First National Moving and Storage to cease operating as a mover of household goods on or about October 4, 2016.

14. On or about August 17, 2016, Public Moving and Storage was authorized by USDOT to operate as a mover of household goods. USDOT ordered Public Moving and Storage to cease operating as a mover of household goods on or about July 3, 2017.

15. On or about February 21, 2017, Public Moving Services was authorized by USDOT to operate as a mover of household goods. USDOT ordered Public Moving Services to cease operating as a mover of household goods on or about October 18, 2017.

16. On or about July 3, 2017, Smart Relocation Solutions, a/k/a Presidential Moving Services, was authorized by USDOT to operate as a mover of household goods. USDOT ordered Smart Relocation Solutions, a/k/a Presidential Moving Services, to cease operating as a mover of household goods on or about March 19, 2018.

17. On or about December 19, 2017, Unified Van Lines was authorized by USDOT to operate as a mover of household goods. USDOT ordered Unified Van Lines to cease operating as a mover of household goods on or about May 25, 2018.

18. On or about April 26, 2018, Flagship Van Lines was authorized by USDOT to operate as a mover of household goods.

### The Racketeering Enterprise

19. At times relevant to this Indictment, the defendants, **ANDREY SHUKLIN,** ██████████, **PHYLLIS RICCI QUINCOCES, a/k/a "Faith Ashford," "Grace Rubestello," "Phyllis Ricci," "Phyllis Ann,"** ████████████ ██████ **VLADIMIR PESTEREANU, a/k/a "Vova,"** ████████████ ██████ ██████ **ROMAN IAKOVLEV,** ██████ ██████, ██████

4

6

████████, JESSICA MARTIN, a/k/a "Emma Ricci," "Mary Austin," and ████████ ████████████████████████████████████ and others known and unknown to the Grand Jury, operated and worked through the companies set forth in paragraphs 8 through 18 of the Indictment, namely, JBR Underground, LLC, United National Moving and Storage, National Relocation Solutions, Independent Van Lines, National Relocation Van Lines, US Relocation Systems, First National Moving and Storage, Public Moving and Storage, Public Moving Services, Smart Relocation Solutions, Presidential Moving Services, Unified Van Lines, and Flagship Van Lines, referred to collectively hereinafter as the "affiliated companies," as if they were a single corporate entity.

20.    At times relevant to this Indictment, the defendants, and others known and unknown to the Grand Jury, owned, operated, and worked as employees, members, and associates of the affiliated companies to move interstate shipments of household goods.

21.    At times relevant to this Indictment, **SHUKLIN** and ████████ coordinated and directed lower-level employees, members, and associates of the affiliated companies.

22.    At times relevant to this Indictment, **SHUKLIN** and ████████ operated the affiliated companies out of multiple locations throughout the United States, including Florida, Ohio, Maryland, North Carolina, Illinois, Texas, California, Connecticut, Colorado, and Missouri. **SHUKLIN** and ████████ operated the affiliated companies principally out of a business address in Hollywood, Florida.  Starting on or about October 2015, **SHUKLIN** and ████████ also operated the affiliated companies out of a warehouse in West Chester, Ohio, which is located in the Southern District of Ohio.

23.    The defendants, **ANDREY SHUKLIN,** ████████, **PHYLLIS RICCI QUINCOCES, a/k/a "Faith Ashford," "Grace Rubestello," "Phyllis Ricci," "Phyllis Ann,"** ████████████████████████████████ **VLADIMIR PESTEREANU, a/k/a**



"Vova," ████████████ ████████████████████████, ROMAN

IAKOVLEV, ████████████, ████████████ JESSICA MARTIN, a/k/a

"Emma Ricci," "Mary Austin," and ████████████████████████

████████████████████ and JBR Underground, LLC, United National Moving and

Storage, National Relocation Solutions, Independent Van Lines, National Relocation Van Lines, US

Relocation Systems, First National Moving and Storage, Public Moving and Storage, Public Moving

Services, Smart Relocation Solutions, Presidential Moving Services, Unified Van Lines, and

Flagship Van Lines, and others known and unknown to the Grand Jury, constituted an "Enterprise"

as defined in Section 1961(4) of Title 18, United States Code, that is, a group of individuals and

entities associated in fact that engaged in, and the activities of which affected, interstate and foreign

commerce, referred to hereinafter as the "Moving Enterprise." The Moving Enterprise constituted

an ongoing organization whose members functioned as a continuing unit for the common purpose of

achieving the objectives and purposes of the Moving Enterprise.

## Purposes of the Enterprise

24. The purposes of the Moving Enterprise included the following:

(a) Enrich the Moving Enterprise and the owners, operators, employees,

members, and associates of the Moving Enterprise by defrauding, extorting, and stealing from

customers who hired affiliated companies of the Moving Enterprise to move their household goods.

(b) Promote and perpetuate the Moving Enterprise and shield its criminal affairs

from law enforcement authorities and customers by concealing the true owners, operators,

employees, and operations of affiliated companies of the Moving Enterprise.

## The Racketeering Conspiracy

25. Between in or about April 2013, and continuing through the date of this Indictment,

in the Southern District of Ohio and elsewhere, the defendants, **ANDREY SHUKLIN,** ████████

6



████, **PHYLLIS RICCI QUINCOCES,** a/k/a "Faith Ashford," "Grace Rubestello,"
"Phyllis Ricci," "Phyllis Ann," ███████████████████████████████
**VLADIMIR PESTEREANU,** a/k/a "Vova," █████ ██████ ███ ████████
████████████, **ROMAN IAKOVLEV,** ██████ ████████, █████
████████, **JESSICA MARTIN,** a/k/a "Emma Ricci," "Mary Austin," and █████████
███████████████████████████ and others known and
unknown to the Grand Jury, each being a person employed by, a member of, and associated with the
Moving Enterprise, an Enterprise engaged in, and the activities of which affected, interstate and
foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and
intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs
of the Moving Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1)
and (5), consisting of multiple acts indictable under:

 (a) 18 U.S.C. § 1343 (relating to wire fraud) and § 2;

 (b) 18 U.S.C. § 659 (relating to the theft from interstate shipment) and § 2;

 (c) 18 U.S.C. § 1951(a) (relating to interference with commerce, robbery, or
   extortion) and § 2;

 (d) 18 U.S.C. § 1028(a) (relating to fraud and related activity in connection with
   identification documents) and § 2.

 26. It was part of the conspiracy that each defendant agreed that a conspirator would
commit at least two acts of racketeering activity in the conduct of the affairs of the Moving Enterprise.

**<u>Manner and Means of the Conspiracy</u>**

 27. Among the manner and means employed by the members in conducting and
participating in the affairs of the Moving Enterprise were the following:

 (a) It was part of the conspiracy that members of the Moving Enterprise
furthered the conspiracy by making false representations to the USDOT and employees of the

USDOT in order for the Moving Enterprise, through the affiliated companies, to operate as an interstate mover of household goods. This included misrepresentations to the USDOT that affiliated companies of the Moving Enterprise did not share common owners, operators, managers, and employees.

(b)     It was further part of the conspiracy that members of the Moving Enterprise caused counterfeit identification documents (including counterfeit drivers' licenses) to be produced, transferred, used, and possessed to conceal the leadership of affiliated companies of the Moving Enterprise.

(c)     It was further part of the conspiracy that, after customers complained to the USDOT about the criminal actions taken by the Moving Enterprise, members of the Moving Enterprise submitted documents to federal regulators containing misrepresentations in order to operate a new affiliated company of the Moving Enterprise as an interstate carrier of household goods.

(d)     It was further part of the conspiracy that members of the Moving Enterprise used aliases when working on behalf of affiliated companies of the Moving Enterprise to conceal their identities from law enforcement and customers.

(e)     It was further part of the conspiracy that members of the Moving Enterprise submitted fake reviews to online sources regarding services provided by affiliated companies of the Moving Enterprise to induce customers to choose the Moving Enterprise.

(f)     It was part of the conspiracy that members of the Moving Enterprise used wire communications, such as emails, to send false representations to customers and potential customers to induce customers to hire affiliated companies of the Moving Enterprise to move the customers' household goods.

(g)     It was part of the conspiracy that members of the Moving Enterprise

8

furthered the conspiracy by emailing to customers "binding" moving estimates without first conducting an on-site inspection of the household goods.

(h)    It was further part of the conspiracy that binding estimates that members of the Moving Enterprise offered to customers were low so as to induce customers to hire the Moving Enterprise to move the customers' household goods.

(i)    It was further part of the conspiracy that, after agreeing to a binding estimate and loading customers' household goods, members of the Moving Enterprise increased the cost of moves above the price agreed to in the binding estimate.

(j)    It was further part of the conspiracy that, after agreeing to a binding estimate and loading customers' household goods, members of the Moving Enterprise falsely claimed that the customers' household goods took up more cubic footage than was set forth in the binding estimate.

(k)    It was further part of the conspiracy that members of the Moving Enterprise misrepresented to customers the amount of actual cubic footage of household goods involved in moves.

(l)    It was further part of the conspiracy that members of the Moving Enterprise knowingly charged customers for moving more cubic footage of household goods than was actually loaded by members of the Moving Enterprise, and others known and unknown to the Grand Jury.

(m)    It was further part of the conspiracy that members of the Moving Enterprise tracked the "actual" and "real" cubic feet of space that household goods occupied during moves.

(n)    It was further part of the conspiracy that members of the Moving Enterprise would send emails to each other containing documents detailing the "actual" and "real" cubic feet used during moves, along with documents detailing the cubic footage that was used to calculate the amount the Moving Enterprise charged to customers for the same moves.

(o)    It was further part of the conspiracy that, at times, members of the Moving

9

Enterprise caused customers' household goods to be stolen while transporting the goods interstate by not delivering the household goods after loading the household goods and receiving payment for moving the household goods.

        (p)      It was further part of the conspiracy that members of the Moving Enterprise extorted, and caused others known and unknown to the Grand Jury to extort, customers into paying money to the Moving Enterprise by increasing the cost of moves after loading customers' household goods and by refusing to relinquish customers' household goods until customers paid an inflated price for delivery of the household goods.

        (q)      It was further part of the conspiracy that a member of the Moving Enterprise threatened to injure another person who interfered with the Moving Enterprise's purposes.

### Overt Acts

28.      In furtherance of the conspiracy and to achieve the illegal objective thereof, the following overt acts, among others, were committed in the Southern District of Ohio and elsewhere:

        (a)      On or about June 5, 2014, **SHUKLIN** filed an OP-1 form to the USDOT on behalf of National Relocation Solutions, LLC in which he certified falsely that he did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite his relationship with another FMCSA-regulated entity within the past three years.

        (b)      On or about June 4, 2015, ▮▮▮▮▮▮▮ filed an OP-1 form to the USDOT on behalf of National Relocation Van Lines in which he certified falsely that he did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite his relationship with another FMCSA-regulated entity within the past three years.

        (c)      On or about August 4, 2015, **QUINCOCES** filed an OP-1 form to the USDOT on behalf of US Relocation Systems in which she certified falsely that she did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite her

relationship with another FMCSA-regulated entity within the past three years.

(d)      On or about April 6, 2016, First National Moving and Storage provided documentation and payment to a third-party company for sales leads that was signed by **SHUKLIN** and an individual ("Individual-1"). Included with the documents was a photocopy of a counterfeit driver's license, where the picture and information on the counterfeit driver's license matched the picture and information on a valid driver's license for ▇▇▇▇▇▇, but was actually in the name of Individual-1.

(e)      On or about October 18, 2016, Public Moving and Storage provided documentation to a third-party company for sales leads that was signed by ▇▇▇▇▇▇ and another individual ("Individual-2"). Included with the documents was a photocopy of a counterfeit driver's license, in which the picture and information on the counterfeit driver's license matched the picture and information on a valid driver's license for a conspirator, but was actually in the name of Individual-2.

(f)      On or about October 2, 2014, a member of the Moving Enterprise emailed a customer information about National Relocation Solutions, which referred falsely to being in business for 15 years.

(g)      On or about June 19, 2015, a member of the Moving Enterprise emailed a customer regarding a move in Hamilton, Ohio information about National Relocation Van Lines, which stated falsely that National Relocation Van Lines was a family owned and operated company and had been in business since 1999.

(h)      On or about January 22, 2016, a member of the Moving Enterprise emailed a customer regarding a move in Piscataway, New Jersey information about US Relocation Systems, referring falsely to being in business for 15 years.

(i)      On or about October 25, 2017, the Internet webpage for First National

11

Moving and Storage stated falsely that First National Moving and Storage had 15 years of experience transporting household goods.

(j)    On or about October 25, 2017, the Internet webpage for Public Moving Services stated falsely that Public Moving Services had "more than 15 years of experience."

(k)    On or about October 25, 2017, the Internet webpage for Presidential Moving Services stated falsely that Presidential Moving Services had just celebrated its 20th anniversary.

(l)    On or about July 31, 2015, members of the Moving Enterprise, acting through National Relocation Solutions, loaded and caused others known and unknown to the Grand Jury to load a customer's household goods located in Hamilton, Ohio, which is in the Southern District of Ohio. Members of the Moving Enterprise increased the cost of the move above the binding estimate after household goods were loaded on the moving truck. Members of the Moving Enterprise charged the customer for using 2,177 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,350 cubic feet of space.

(m)    On or about November 5, 2015, members of the Moving Enterprise, acting through US Relocation Solutions, increased the cost of a customer's move above the binding estimate after the household goods were loaded. Members of the Moving Enterprise charged the customer for using 550 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 450 cubic feet of space. Members of the Moving Enterprise never delivered the customer's household goods despite taking possession of the household goods and receiving a down payment for delivery of the household goods.

(n)    On or about July 10, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Round Rock, Texas to Columbus, Ohio, which is located in the Southern District of Ohio. Members of Moving Enterprise increased the cost of the move

12

above the binding estimate after the household goods were loaded. A member of the Moving Enterprise also told the customer that the customer had to agree to the higher price or the customer's household goods would not be returned to her. The customer complained about the increased price during subsequent telephone calls from Columbus, Ohio to members of the Moving Enterprise. During one telephone call, a member of the Moving Enterprise told the customer that the Moving Enterprise would auction the customer's goods if the customer did not pay the higher price. Members of the Moving Enterprise charged the customer for using 800 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 500 cubic feet of space.

 (o) On or about May 24, 2016, members of the Moving Enterprise, through First National Moving and Storage, increased the cost of a move above the binding estimate after the household goods were loaded. When the customer requested that the movers unload the goods at the pickup site rather than pay the higher price, a member of the Moving Enterprise refused and told the customer that an additional payment was required for movers to unload the goods at the pickup site. Members of the Moving Enterprise charged the customer for using 4,150 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 3,300 cubic feet of space. Members of the Moving Enterprise never delivered the customer's household goods, which were stored at the Moving Enterprise's warehouse in West Chester, Ohio, despite taking possession of the household goods and receiving a down payment for delivery of the household goods.

 (p) On or about May 24, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Fort Wayne, Indiana to Middletown, Ohio, which is located in the Southern District of Ohio, and a storage unit. Members of the Moving

13

Enterprise increased the cost of the move above the binding estimate after loading household goods. Members of the Moving Enterprise charged the customer for using 1,600 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,200 cubic feet of space.

(q)     On or about August 7, 2015, members of the Moving Enterprise, acting through National Relocation Solutions, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Mt. Vernon, Ohio, which is located in the Southern District of Ohio, to Mountain View, Arkansas. Members of the Moving Enterprise charged the customer for using 4,000 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only approximately 3,000 cubic feet of space.

(r)     On or about June 8, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Panama City, Florida to Glenville, North Carolina. Members of the Moving Enterprise charged the customer for using 1,100 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 750 cubic feet of space.

(s)     On or about July 30, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load loaded a customer's goods to transport from Monument, Colorado to Madison, Alabama. Members of the Moving Enterprise charged the customer for using 2,835 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(t)     On or about August 12, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the

14

Grand Jury to load a customer's goods to transport from Walton, Kentucky to College Station, Texas. Members of the Moving Enterprise increased the cost of the move above the binding estimate after loading household goods. Members of the Moving Enterprise charged the customer for using 2,751 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(u)     On or about August 15, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Front Royal, Virginia to Golden, Colorado. Members of the Moving Enterprise charged the customer for using 1,700 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,300 cubic feet of space.

(v)     On or about August 21, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Steger, Illinois to Chandler, Arizona. Members of the Moving Enterprise charged the customer for using 2,800 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(w)     On or about June 16, 2017, members of the Moving Enterprise, through Public Moving Services, loaded and caused others known and unknown to the Grand Jury to load a customer's household goods to transport from Steilacoom, Washington to a storage facility in Clarksville, Tennessee. The customer made payments for the move and attempted to arrange delivery on multiple occasions. On or about October 12, 2017, the customer made arrangements with members of the Moving Enterprise to have the household goods delivered to the customer's new home in Tennessee. Members of the Moving Enterprise never delivered any of the customer's

15

household goods and never provided any explanation for not delivering the household goods.

(x)     On or about June 15, 2017, during a telephone call to a third-party company located in Maryland, ███████ threatened to blow up a building owned by the third-party company and shoot the third-party company's employees.

**All in violation of Title 18, United States Code, Section 1962(d).**

## FORFEITURE ALLEGATION

29.     The allegations contained in Count One of this Indictment are hereby incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c).

30.     Upon conviction of the offense set forth in Count One of this Indictment, the defendants, **ANDREY SHUKLIN,** ██████████, **PHYLLIS RICCI QUINCOCES, a/k/a "Faith Ashford," "Grace Rubestello," "Phyllis Ricci," "Phyllis Ann,"** ██████████ ██████████ **VLADIMIR PESTEREANU, a/k/a "Vova,"** ██████████ **ROMAN IAKOVLEV,** ██████████ ██████████, **JESSICA MARTIN, a/k/a "Emma Ricci," "Mary Austin, and** ██████████ ██████████ shall forfeit to the United States, pursuant to 18 U.S.C. § 1963, including but not limited to:

(a)     any interest acquired or maintained in violation of 18 U.S.C. § 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

(b)     any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the

16

defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Tile 18, United States Code, Section 1963(a)(2); and

(c)  any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 18 U.S.C. § 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3);

including, but not limited to, all defendants' ownership interests in the companies listed as part of the enterprise and all property constituting proceeds and a sum of money equal to an amount that represents the proceeds that the defendants obtained as a result of the offense.

## SUBSTITUTE ASSETS

31.  If any of the property described above, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 1963(m), to seek forfeiture of any

other property of the defendants up to the value of the property described above.

**All pursuant to Title 18, United States Code, Sections 1962, 1963(a)(1), (2), and (3), and (m).**

**A TRUE BILL.**

_____

**GRAND JURY FOREPERSON**

**BENJAMIN C. GLASSMAN**
**UNITED STATES ATTORNEY**

_____

**MATTHEW SINGER / MEGAN GAFFNEY**
**ASSISTANT UNITED STATES ATTORNEYS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
     Plaintiff,

              vs                 Case No:  CASES: 18-6355-SNOW
ANDREY SHUKLIN (18-6355)                18-6356-SNOW
PHYLLIS RICCI (18-6356)                   18-6357-SNOW
JESSICA MARTIN (18-6357)                18-6358-SNOW
VLADIMIR PESTEREANU (18-6358)    SD/OHIO CASE: 18-109

        Defendant.

## O R D E R

THIS CAUSE is before the Court for the initial appearance of the above-named

defendant(s) on a SEALED S.S. INDICTMENT from the Southern District of Ohio.

UPON ORAL motion of the government in open court that the case be unsealed, it is

hereby

ORDERED AND ADJUDGED that the  S.S. INDICTMENT  be unsealed as to all

parties.

DONE AND ORDERED at Fort Lauderdale, Florida this 31st day of July, 2018.

                                          _Lurana S. Snow_

                                  LURANA S. SNOW
                         UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record

**COURT MINUTES** /order

## U.S. MAGISTRATE JUDGE LURANA S.SNOW - FORT LAUDERDALE, FLORIDA

DEFT: PHYLLIS ANN RICCI (J)#          CASE NO: 18-6356-SNOW

AUSA: Terry Lindsey /present          ATTY:
                                            (If applicable-appeals colloquy)

AGENT:                               VIOL: Removal: SD/OHIO 18:1962

PROCEEDING: INITIAL APPEARANCE        RECOMMENDED BOND:

BOND HEARING HELD (yes) no            COUNSEL APPOINTED: FPD: Bob Berube

BOND SET @: $ 50,000 PSB              To be consigned by: Mother
                                                          w/in 24 hrs.

❏   Do not violate any law.                      A - advised of charges
                                                 Mot to unseal is
✓   Appear in court as directed.                 Granted.

✓   Surrender and / or do not obtain passports / travel
    documents.

✓   Rpt to PTS as directed / or _____ x's a week/month by   A - Sworn for counsel
    phone; _____ x's a week/month in person.

❏   Random urine testing by Pretrial Services. _____
    Treatment as deemed necessary.

❏   Maintain or seek full - time employment.

❏   No contact with victims / witnesses.          A - Waives removal
                                                  Removal ordered.
❏   No firearms.

❏   Curfew: _____

✓   Travel extended to: S.D/Ohio + SD/FL

❏   Halfway House _____

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| INQUIRY RE COUNSEL: | | | | |
| PTD/BOND HEARING: | | | | |
| REMOVAL: | | | | |

CHECK IF
APPLICABLE_____:     For the reasons stated by counsel for the Defendant and finding that the ends of justice served by granting the ore
                        tenus motion for continuance to hire counsel outweigh the best interests of the public & the Defendant in a Speedy
                        Trial, the Court finds that the period of time from today, through and including _____, shall be deemed
                        excludable in accordance with the provisions of the Speedy Trial Act, 18 USC 3161 et seq..

DATE: 7-31-18   TIME: 11:00am   DAR 11:14:33   Begin:        End:

10 min

22

# UNITED STATES DISTRICT COURT
## FOR THE

### SOUTHERN DISTRICT OF FLORIDA

Case No:  18-6356-SNOW
SD/Ohio 18-109

UNITED STATES OF AMERICA,
Plaintiff,

v

**PHYLLIS ANN RICCI,**
**Defendant.**

### WAIVER OF REMOVAL HEARING

I , Phyllis Ann Ricci , charged in a proceeding pending in the  Southern  District of  Ohio, with

violation of  18:1962 and having been arrested in the Southern District of Florida and taken before

a United States Magistrate Judge for that district, who informed me of the charge and of my right

to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have

a hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned

magistrate judge and consent to the issuance of a warrant/ order  for my removal to the Southern

District of  Ohio  where the aforesaid charge is pending against me.

JULY 31       ,2018

X .....................................................
Signature of defendant

.....................................................
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APPEARANCE BOND: _____

CASE NO.: _18-6356-Snow_
Deft# _____

UNITED STATES OF AMERICA
        Plaintiff,
                                        JAIL #_____

v.

_Phyllis Ann Ricci_ Defendant,

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ _50,000 PSB CD signed by mother_

## STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

1. Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

2. May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

3. May not change his or her present address as recorded on this bond without prior permission in writing from the court.

4. Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

6. Shall not commit any act in violation of state or federal laws.

DEFENDANT: _Ricci_

CASE NUMBER: _18-6356-____

PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

__✓__a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

__✓__b. Report to Pretrial Services as follows: ( ✓ as directed or _____ times in person and _____ times by telephone;

____c. Submit to substance abuse testing and/or treatment;

____d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner;

____e. Participate in mental health assessment and/or treatment;

____f. Participate and undergo a sex offense specific evaluation and treatment;

____g. Maintain or actively seek full-time employment;

____h. Maintain or begin an educational program;

____i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

____j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

____k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

____l. May not visit commercial transportation establishment: _airports, seaport/marinas, commercial bus terminals, train stations, etc._;

____m. No access to the internet via any type of connectivity device (_i.e. computers, pda's, cellular phones, tv's_), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

____n. **HOME CONFINEMENT PROGRAM**  The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) **will not** or ( ) **will include electronic monitoring or other location verification system, paid for by the defendant** _based upon his/her ability to pay_ ( ) or paid for by Pretrial Services ( ).

_____ **Curfew:** You are restricted to your residence every day from _____ to _____, or as directed by the Court.

_____ **Home Detention:** You are restricted to your residence at all times except for: ( ) **medical needs or treatment,** ( ) **court appearances,** ( ) **attorney visits or court ordered obligations, and** ( ) **other** _____.

____o. **HALFWAY HOUSE PLACEMENT**  The defendant shall reside at a  halfway house or community corrections center and abide by all the rules and regulations of the program.
You are restricted to the halfway house at all times except for: ( ) **employment;** ( ) **education;**
( ) **religious services;** ( ) **medical, substance abuse, or mental health treatment;** ( ) **attorney visits;**
( ) **court appearances;** ( ) **court ordered obligations;** ( ) **reporting to Pretrial Services; and**
( ) **other** _____.

__✓__p. May travel to and from: _SD/FL & SD/Ohio_____, and must notify Pretrial Services of travel plans before leaving and upon return.

____q. Comply with the following additional conditions of bond:

_____

_____

DEFENDANT: _Roci_

CASE NUMBER: _18 - 6356 - Snow_

PAGE THREE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. § 3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. § 401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. § 1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more that $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: _Ricci_

CASE NUMBER: _18-6356-Snow_

**PAGE FOUR**

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it as been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

**(NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing.)**

### DEFENDANT

Signed this _31_ day of _July_____, 2018  at Ft. Lauderdale, Florida.
Signed and acknowledged before me:
DEFENDANT:(Signature)_____
WITNESS:_____
_Tamarac_
                city                                    state

### CORPORATE SURETY

Signed this _____ day of _____, 2015, at _____, Florida.
SURETY:_____
                                        AGENT:(Signature)_____
                                        PRINT NAME:_____
_____
          city                              state

### INDIVIDUAL SURETIES

Signed this__ day of _____, **2018**, at _FTL__, Florida.       Signed this__ day of _____, **2018** at _FTL__, Florida.
SURETY:(Signature)_____                              SURETY:(Signature)_____
PRINT NAME:_____                                     PRINT NAME:_____
RELATIONSHIP TO                                                RELATIONSHIP TO
DEFENDANT:_____                                      DEFENDANT:_____

_____                                                _____
        city                        state                              city                        state

  SURETY (Signature)_____                             SURETY (Signature)_____
PRINT NAME:_____                                     PRINT NAME:_____
RELATIONSHIP:_____                                   RELATIONSHIP _____
          City/STATE_____                            City/STATE_____

### APPROVAL BY COURT

Date: _7-31-18_

**UNITED STATES MAGISTRATE JUDGE**  27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APPEARANCE BOND:_____

CASE NO.: 18-6356-Snow

Deft# _____

UNITED STATES OF AMERICA
            Plaintiff,

v.                                                                  JAIL #_____

Phyllis Ann Ricci   Defendant,
_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of
$ 50,000 PSB CO signed by mother

## STANDARD CONDITIONS OF BOND

The conditions of this bond are that the defendant:

    1.  Shall appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred.  The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the court shall order otherwise.

    2.  May not at any time, for any reason whatever, leave the Southern District of Florida or other District to which the case may be removed or transferred after he or she has appeared in such District pursuant to the conditions of this bond, without first obtaining written permission from the court, except that a defendant ordered removed or transferred to another district may travel to that district as required for court appearances and trial preparation upon written notice to the Clerk of this court or the court to which the case has been removed or transferred. The Southern District of Florida  consists of the following counties: **Monroe, Miami-Dade, Broward, Palm Beach, Martin, St. Lucie, Indian River, Okeechobee, and Highlands.**

    3.  May not change his or her present address as recorded on this bond without prior permission in writing from the court.

    4.  Is required to appear in court at all times as required by notice given by the court or its clerk to the address on this bond or in open court or to the address as changed by permission from the court.  The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case.  In no event may a defendant assume that his or her case has been dismissed unless the court has entered an order of dismissal.

    5. The defendant must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    6.  Shall not commit any act in violation of state or federal laws.

DEFENDANT: _Ricci_

CASE NUMBER: _18-6356-_____

PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

__✔a.__ Surrender all passports and travel documents, if any, to the Pretrial Services Office and not obtain any travel documents during the pendency of the case;

__✔b.__ Report to Pretrial Services as follows: ( _✔as directed or_ _____ _times in person and_ _____ _times by telephone_;

___c. Submit to substance abuse testing and/or treatment;

___d. Refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner;

___e. Participate in mental health assessment and/or treatment;

___f. Participate and undergo a sex offense specific evaluation and treatment;

___g. Maintain or actively seek full-time employment;

___h. Maintain or begin an educational program;

___i. Avoid all contact with victims of or witnesses to the crimes charged, except through counsel;

___j. Refrain from possessing a firearm, destructive device or other dangerous weapons;

___k. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

___l. May not visit commercial transportation establishment: _airports, seaport/marinas, commercial bus terminals, train stations, etc._;

___m. No access to the internet via any type of connectivity device (_i.e. computers, pda's, cellular phones, tv's_), and follow instructions as outlined in the agreement waiver provided to you by Pretrial Services;

___n. **HOME CONFINEMENT PROGRAM** The defendant shall participate in one of the following home confinement program components and abide by all the requirements of the program which **(   ) will not** or **(   ) will include electronic monitoring or other location verification system, paid for by the defendant based upon his/her ability to pay (   ) or paid for by Pretrial Services (   ).**

_____ **Curfew:** You are restricted to your residence every day from _____ to _____, or as directed by the Court.

_____ **Home Detention:** You are restricted to your residence at all times except for: **(   ) medical needs or treatment, (   ) court appearances, (   ) attorney visits or court ordered obligations, and (   ) other** _____.

___o. **HALFWAY HOUSE PLACEMENT** The defendant shall reside at a halfway house or community corrections center and abide by all the rules and regulations of the program.
You are restricted to the halfway house at all times except for: **(   ) employment; (   ) education; (   ) religious services; (   ) medical, substance abuse, or mental health treatment; (   ) attorney visits; (   ) court appearances; (   ) court ordered obligations; (   ) reporting to Pretrial Services; and (   ) other** _____.

__✔p.__ May travel to and from: _SD/FL y SD/Ohio_ _____, and must notify Pretrial Services of travel plans before leaving and upon return.

___q. Comply with the following additional conditions of bond:
_____
_____

DEFENDANT: _Roach_
CASE NUMBER: _18 - 6356-Snow_
PAGE THREE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. § 3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. § 401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. § 1510 makes it a criminal offense punishable by up to five years of imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years of imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more that $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: *Ricci*
CASE NUMBER: *18-6356 Snow*
PAGE FOUR

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of four pages, or it as been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

**(NOTE: Page 5 of this form MUST be completed before the bond will be accepted for filing.)**

### DEFENDANT

Signed this __31__ day of __July_____, 2018   at Ft. Lauderdale, Florida.
Signed and acknowledged before me:
WITNESS:_____

DEFENDANT:(Signature) _____
__Tamarac_____        __FL__
         city                                 state

### CORPORATE SURETY

Signed this _____ day of _____, **2015**, at _____, Florida.
SURETY:_____

AGENT:(Signature)_____
PRINT NAME:_____

_____        _____
         city                          state

### INDIVIDUAL SURETIES

Signed this__ day of _____, **2018** , at _FTL__, Florida.
SURETY:(Signature)_____
PRINT NAME:_____
RELATIONSHIP TO
DEFENDANT:_____

_____        _____
         city                          state

Signed this__ day of _____, **2018**  at _FTL__, Florida.
SURETY:(Signature)_____
PRINT NAME:_____
RELATIONSHIP TO
DEFENDANT:_____

_____        _____
         city                          state

SURETY (Signature)_____
PRINT NAME:_____
RELATIONSHIP:_____
         City/STATE_____

SURETY (Signature)_____
PRINT NAME:_____
     RELATIONSHIP _____
         City/STATE_____

### APPROVAL BY COURT

Date:_7-31-18_____

_____
**UNITED STATES MAGISTRATE JUDGE**   31

**(CM/ECF RESTRICTED)**

DEFENDANT: *Ricci*
CASE NUMBER: *18-6356-Snow*
PAGE FIVE:

## ADDRESS AND CONTACT INFORMATION
## FOR DEFENDANT AND SURETIES

As indicated in condition 3 of this bond, the defendant "May not change his or her present address as recorded on this bond without prior permission in writing from the court". The current addresses of the defendant and sureties are as indicated below:

### DEFENDANT
PRINT NAME: *Jessica Martin*
STREET ADDRESS: *7823 NW 67 Ave*
CITY: *Tamarac* STATE *FL* ZIP: *33321*
TELEPHONE: *754 2140340*

### CORPORATE SURETY
SURETY: _____
AGENT: _____
STREET ADDRESS _____
CITY: _____ STATE _____ ZIP_____
TELEPHONE: _____

### INDIVIDUAL SURETIES
PRINT NAME: _____
RELATIONSHIP *Mother*
STREET ADDRESS _____
CITY: _____ STATE_____ ZIP_____

PRINT NAME: _____
RELATIONSHIP _____
STREET ADDRESS _____
CITY: _____ STATE_____ ZIP_____

PRINT NAME: _____
RELATIONSHIP: _____
STREET ADDRESS: _____
CITY: _____ STATE_____ ZIP____
TELEPHONE: _____

PRINT NAME: _____
RELATIONSHIP: _____
STREET ADDRESS: _____
CITY: _____ STATE:_____ ZIP_____
TELEPHONE: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-6356-SNOW

UNITED STATES OF AMERICA

vs                          ORDER OF REMOVAL

PHYLLIS RICCI                        /

It appearing that in the Southern District of Ohio an indictment was returned against the above-named defendant on a charge of 18:1962 that the defendant was arrested in the Southern District of Florida and was given a hearing before a United States Magistrate Judge at Fort Lauderdale, Florida, which official committed the defendant for removal to the Southern District of Ohio, it is

ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge for removal and posted bail in the amount of $50,000 PSB which was approved by the United States Magistrate Judge, and it is further

ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bail bond furnished by the defendant, and it is further

ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Fort Lauderdale, Florida this 31st day of July, 2018.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

cc: Miami, Financial